UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                       Case No. 2:04-cr-42
                                          HON. DAVID W. MCKEAGUE

MATTHEW SEAN SPRY,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

      Defendant Matthew Spry is charged in a one-count indictment with aggravated sexual abuse. According to the indictment, defendant engaged in an unlawful sexual act with a minor between May 12, 1998, and July, 1998. Defendant was interrogated by FBI Special Agent Jay Johnston on December 4, 2003, first inside a car in the parking of the Hannahville Public Schools and then at the Hannahville Tribal Police Department. Some two months later, defendant was interrogated at the FBI office in Marquette. Defendant has filed a motion to suppress, maintaining that his Miranda rights were violated during the interrogations. A hearing was held on April 11, 2005. Testifying at the hearing were FBI Special Agent Jay Johnston, former Chief of Police Thomas Hayward of the Hannahville Police Department, FBI Special Agent Samuel Ruffino, and defendant's wife, Cynthia Spry. At the hearing, defense counsel requested the opportunity to file a post hearing brief. Thereafter, the Court was notified that defense counsel did not wish to file a brief. For the reasons that follow, I recommend that defendant's motion to suppress be denied.

        The facts as gleaned from the hearing are as follows. On December 4, 2003, Special Agent Johnston interviewed the defendant in the Hannahville Public School parking lot at

approximately 2:30 p.m.  Defendant was approached in the parking lot and advised that he was not under arrest and asked if he was willing to speak to Special Agent Johnston in Johnston's Ford Explorer.  Defendant agreed to get into the Explorer and sat in the front passenger seat while Hannahville Police Chief Hayward was in the back seat.  Upon entering the vehicle, defendant was again told that he was not under arrest and was informed that he was free to go at any time and that he did not have to answer any questions.  Initially, when confronted with the allegations of sexual assault, defendant was surprised and denied that he had engaged in the alleged conduct.  Shortly after the interview began, defendant did admit to some contact with N.M.  Defendant denied any contact with K.M.  The interview in the Ford Explorer lasted about 35 minutes.

Defendant was then asked if he was willing to go to the Hannahville Police Department to continue the interview.  Defendant was informed that he was not under arrest, that he did not have to go, and that he was not required to answer any questions.  Defendant agreed to go to the Police Department and drove himself there in his car with his wife.  Initially, Mrs. Spry was allowed to sit in on the interview, but she eventually left.  At the Police Department, defendant was informed that he was not under arrest, was free to leave at any time, and was not required to answer any questions.  The interview at the Police Department lasted 25 minutes.  At the conclusion of the interview, defendant was asked if he was willing to take a polygraph.  According to Special Agent Johnston, plaintiff agreed to take a polygraph at a later date.  Defendant's behavior during the interview at the Police Department was "polite" and when the interview concluded, defendant left on his own in his own car.  On February 5, 2004, defendant came to the FBI office in Marquette, where he was taken to an interview room and  read his Miranda rights and a polygraph rights form. The polygraph was performed by Special Agent Ruffino.  After the polygraph was performed, Agent

Ruffino informed defendant that he had failed the polygraph and defendant allegedly indicated he was guilty of the offense.

There is no suggestion in the record that any threats, coercion, or force was utilized during any of the interviews of the defendant. Furthermore, the record does not support a finding that defendant was under the influence of alcohol or drugs, or was deprived of sleep or food at any time. The record clearly establishes that during the interview in the parking lot, and subsequently at the Police Department in December of 2003, defendant was not read his Miranda rights and he was subject to interrogation. Defendant's wife testified that defendant was upset and shaking after he was accused of molesting his sisters. At the conclusion of the interview in February of 2004, defendant signed a written statement. The statement was dictated to Special Agent Johnston by the defendant. The statement begins, "I, Matthew Spry, voluntarily provide the following statement. No threats or promises of any kind have been made to me." During the course of the two interviews in December of 2003, and the interview in February of 2004, defendant made inculpatory statements. It is defendant's position that these statements must be suppressed because they were obtained in violation of his Miranda rights. According to the defendant, the interrogations which occurred in December of 2003 were custodial interrogations and were in violation of *Miranda* because defendant was not informed of his rights. The parties do not dispute that defendant was interrogated in December of 2003. The primary issue before the Court is whether or not defendant was in custody during either of these two interviews.

In *United States v. Salvo*, the Sixth Circuit explained:

> The Fifth Amendment provides that a defendant cannot be "compelled in any criminal case to be a witness against himself." Consistent with this right against self incrimination, the Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436, 478-479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966), ruled that suspects cannot

- 3 -

be subjected to a custodial interrogation until they have been advised of their rights. In order to encourage compliance with this rule, incriminating statements elicited from suspects in custody cannot be admitted at trial unless the suspect was first advised of his or her Miranda rights. *Id.*

133 F.3d 943, 948 (6th Cir. 1998).

It is well established that law enforcement's obligation to administer Miranda warnings is triggered where there has been such a restriction on a person's freedom of movement as to render him "in custody." *Miranda*, 384 U.S. at 444. In determining whether an individual is in custody, the Court must examine the totality of the circumstances surrounding the interrogation. Courts look to factors which include: (1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police or voluntarily acquiesced to the request for an interview. *See Salvo*, 133 F.3d at 950.

In *California v. Beheler*, 463 U.S. 1121, 103 S. Ct. 3517 (1983), the suspect voluntarily accompanied police to the station for questioning and freely departed at the end of the interview, after being told he was not under arrest but that his statement would be evaluated by the district attorney concerning that possibility. Similarly, in *Oregon v. Mathiason*, 429 U.S. 492, 97 S. Ct. 711 (1977), the defendant agreed to meet the investigating officer at the station house for an interview. The defendant was told that he was a burglary suspect but was not under arrest. He was told that his truthfulness would be evaluated by the district attorney or judge. He was taken into a closed office where he was questioned concerning the burglary. The defendant was falsely told that his fingerprints were found at the scene. After a long pause, the defendant admitted to the crime.

- 4 -

The defendant was then given Miranda warnings, but was not arrested. He left the station after being informed that the case would be referred to the district attorney for a decision whether charges would be pursued.

In both cases, the Supreme Court found that Miranda warnings were unnecessary because questioning did not take place in a context in which the defendant's freedom to depart was restricted in a meaningful way. The Court acknowledged that all police interviews of those suspected of a crime have coercive aspects. However, police are not required to administer Miranda warnings to every suspect they interview. It is only under the additional pressure of a custodial environment that *Miranda* is triggered.

Viewing the totality of the circumstances in this case, I find that the defendant voluntarily acquiesced in the request for an interview in the parking lot and thereafter at the Police Department. Defendant was told that he was free to leave and did not have to answer any questions. The testimony of Special Agent Johnston and Police Chief Hayward was consistent and credible. The interviews were not unduly long and there is no suggestion that undue force, threats, or promises were used by the officers. There is no testimony that strong arm tactics or deceptive strategents were used. Defendant failed to testify and there is no evidence in the record to support a claim that a reasonable person under the circumstances of this case would have concluded that he was in custody or otherwise deprived of his freedom of action in a significant way. Defendant has failed to present facts supporting his contention that he was in custody when interviewed in December of 2003 or February of 2004.

Accordingly, it respectfully recommended that defendant's motion to suppress statement (docket #28) be denied.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3.  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley                          
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  April 28, 2005

- 6 -